OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS

OSCN navigation

Home

Courts

Court Dockets

Legal Research

Calendar

Help

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS2015 OK 50Case Number: SCBD-6223Decided: 06/30/2015As Corrected: July 14, 2015THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 50, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL
RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION,
Complainant,v.JAMES M. DEMOPOLOS,
Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

¶0 Respondent, a lawyer, pled guilty in the District Court of Oklahoma County
to the crimes of obstructing a public officer, threatening to perform an act of
violence involving or intended to involve serious bodily harm or death, and
domestic abuse assault and battery. The Oklahoma Bar Association sought a
post-conviction immediate suspension of Respondent's license to practice law and
this Court issued an order of immediate suspension. Respondent sought and was
provided a mitigation hearing held before a trial panel of the Professional
Responsibility Tribunal. The panel recommended a six-month suspension with a
deferred suspension of two years and one day while the Bar sought a suspension
for two years. We hold that the appropriate discipline is a one-year suspension
and an additional deferred suspension of one year with conditions upon
Respondent's conduct and rehabilitation.

INTERIM SUSPENSION PREVIOUSLY ORDERED:RESPONDENT
IS SUSPENDED FROM THE PRACTICE OF LAW FOR ONE YEARCOMMENCING ON
FEBRUARY 2, 2015, WITH AN ADDITIONAL ONE-YEARSUSPENSION UNTIL
FEBRUARY 3, 2017, THAT IS DEFERRED UPONRESPONDENT'S COMPLIANCE WITH
CONDITIONS;RESPONDENT SHALL PAY COSTS WITHIN NINETY DAYS

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar
Association, Oklahoma City, Oklahoma, for Complainant.John W. Coyle, III,
Coyle Law Firm, Oklahoma City, Oklahoma, for Respondent.

EDMONDSON, J.
¶1 The Respondent, a lawyer licenced to practice law in Oklahoma, pled guilty
to three misdemeanors and the Bar Association sought to have his Bar license
immediately suspended with a two-year suspension by commencing a proceeding
authorized by Rule 7 of the Rules Governing Disciplinary Proceedings. We
previously entered an order of interim suspension. After review of the record
made before the trial panel of the Professional Responsibility Tribunal, we
conclude that the appropriate discipline is a suspension of one year with an
additional deferred professional suspension for one year conditioned upon
Respondent's compliance with conditions relating to his conduct and
rehabilitation.
¶2 A criminal Information was filed against the Respondent, James M.
Demopolos, in the District Court for Oklahoma County.1 One count was dismissed2 and he pled
guilty to violating: (1) 21 O.S. §
540, obstructing a public officer;3 (2) 21
O.S. § 1378(B), threatening to perform an act of violence involving or
intended to involve serious bodily harm or death;4 and (3) 21 O.S. § 644(C), domestic abuse
assault and battery.5 Upon Respondent's guilty plea, the District Court
deferred its two-year sentence until its review on January 6, 2017, and ordered
Respondent to pay specific fines and costs. The court ordered he be placed under
the supervision of the Oklahoma Department of Corrections and successfully
complete a 52-week Batterers Intervention Program6 with substance abuse testing.
¶3 A lawyer who has been convicted or has tendered a plea of guilty or nolo
contendere pursuant to a deferred sentence plea agreement is subject to
professional discipline when the crime demonstrates such lawyer's unfitness to
practice law.7
The clerk of any court in this State in which a lawyer is convicted or as to
whom proceedings are deferred is required to "transmit certified copies of the
Judgment and Sentence on a plea of guilty, order deferring judgment and
sentence, indictment or information and judgment and sentence of conviction to
the Chief Justice of the Supreme Court and to the General Counsel of the
Oklahoma Bar Association within (5) days after said conviction."8 The transmitted copies
received by the Bar Association are filed in this Court by the Bar
Association.9
The Bar Association filed in this Court copies of the Information and Guilty
Plea from Respondent's criminal case.
¶4 Upon receipt of the specified documents from a lawyer's criminal case,
this Court enters an interim order of suspension that immediately suspends the
lawyer from practicing law, and the lawyer is provided with an opportunity to
show cause why the order of suspension should be set aside.10 This Court entered an
interim suspension order on February 2, 2015, and provided Respondent with an
opportunity to object to the interim suspension and request a mitigation hearing
before a trial panel of the Professional Responsibility Tribunal (PRT).11 Respondent
filed a waiver of his opportunity to object to the interim suspension, and he
requested a mitigation hearing. A trial panel of the PRT held a mitigation
hearing with Respondent being represented by counsel. After that hearing, both
the Bar and Respondent filed their briefs in this Court addressing evidence at
the hearing and legal argument concerning the appropriate professional
discipline.
I. The Court's Rule 7 Review of Respondent's Conduct
¶5 This Court has exclusive original jurisdiction over Bar disciplinary
matters.12
Protecting the public and purification of the Bar are the primary purpose of
disciplinary proceedings rather than punishment of the offending attorney.13 In Bar
disciplinary proceedings, this Court will conduct a de novo review of the
record to determine if misconduct has occurred and what discipline is
appropriate.14 Pursuant to Rule 7.2 of the Rules Governing
Disciplinary Proceedings (RGDP), Respondent's Guilty Plea constitutes conclusive
evidence of the commission of the crimes that serve as the basis for
professional discipline, and with the additional documents filed in this Court
there is a sufficient record for our review of Respondent's Bar proceeding.15
¶6 The evidence before the trial panel was that one Saturday evening in May
of 2014, Respondent was verbally abusive and consuming alcohol. His condition
caused his wife to leave their residence and spend the night with a relative.
Upon her return the next morning she made a 911 telephone call seeking help
because Respondent was drunk, verbally abusive, and physically abusive having
hit her in her arm and head with his closed hand.
¶7 The police arrived and observed his intoxicated state. He made threats of
physical violence against his wife in the presence of the police, including
statements describing what he would do to her when he was no longer in custody.
They noticed a bruise on his wife consistent with her complaint. The police
sought identifying information from him and he responded with a contemptuous
epithet. He admitted to the police that he had hit his wife. These facts served
as a basis for three counts in the Information filed against him and his
subsequent guilty pleas.
¶8 Although this Court's previous order of interim suspension is a
determination that Respondent's admitted criminal conduct facially demonstrates
his unfitness to practice law, we also examine all of his conduct in
light the evidence submitted at the post-mitigation hearing for our
determination of the proper professional discipline for Respondent.16 There are
two basic issues in this summary disciplinary proceeding: does the conviction
demonstrate the lawyer's unfitness to practice law, and if so, what is the
proper professional discipline.17 We do not adjudicate the existence of facts which
gave rise to the criminal charges.18
¶9 In Givens we explained that "Violent acts in the form of domestic
abuse demonstrate a lawyer's unfitness to practice law. We most recently found,
'[a]s incidents of domestic ... abuse rise and become the focus of ... public
attention, it becomes more incumbent on this Court to protect the public by
sending a message to other lawyers that this misconduct is considered a serious
breach of a lawyer's ethical duty and will not be tolerated.'"19 Twenty-five years ago
this Court discussed criminal convictions that demonstrate unfitness to practice
law; and we noted language appearing in a Comment to one of our Rules of
Professional Conduct that was also cited recently in Givens: ". .
. Although a lawyer is personally answerable to the entire criminal law, a
lawyer should be professionally answerable only for offenses that indicate lack
of those characteristics relevant to law practice. Offenses involving
violence, dishonesty or breach of trust, or serious interference with the
administration of justice are in that category."20
¶10 A lawyer's guilty plea or criminal conviction for a violent act of
domestic abuse is a violation of the Oklahoma Rules of Professional Conduct,
5 O.S. Ch. 1, App. 3-A, Rule 8.4(b).21 Respondent's guilty plea for a violent act of
domestic abuse merits professional discipline imposed by this Court.
II. The Court's Rule 7 Review of Respondent's Conduct
andMitigation of Professional Discipline
¶11 The evidence at the mitigation hearing was that Respondent had practiced
law since 1978 and had no previous complaints for professional discipline.
Respondent had previously worked as an oil and gas title lawyer, and no
allegations have been made that his conduct has injuriously affected a client.
Respondent is currently employed as a landman, and he works on title
examinations authored by his employer who is a lawyer. An affidavit was
submitted to show that Respondent has been compliant with the Lawyers Helping
Lawyers program. A lawyer testified concerning Lawyers Helping Lawyers and
Respondent's participation in the program.
¶12 A lawyer testified that he became Respondent's sponsor in Alcoholics
Anonymous (AA). He explained that Respondent had made progress in that program.
The evidence shows that Respondent's continuous participation in AA had been for
less than a year at the time the mitigation hearing occurred. Another lawyer
testified that he had shared an office with, and rented an office to, Respondent
for several years. He stated that he had never seen him consume alcohol while
working, or show any indication that alcohol had affected his practice of
law.
¶13 The evidence at the mitigation hearing also included Respondent's
previous chronic use of marijuana as well as his use of sedatives. Respondent
successfully completed a thirty-day in-patient treatment program for substance
abuse after his arrest. However, he had two relapses of consuming alcohol
shortly after returning home after treatment, and these two events occurred
approximately five months prior to the mitigation hearing. The evidence showed
that immediately after the relapses he continued with attending his AA meetings
and informed his AA sponsor of the events. The record shows that Respondent has
not failed any of his post-conviction drug tests, and testimony shows that he
has not used marijuana or sedatives after his in-patient treatment.
¶14 Testimony at the hearing included an incident that occurred eleven years
earlier when Respondent had been drinking alcohol and was arrested after having
a physical altercation with a male relative. No criminal charges were filed
relating to this arrest.
¶15 Testimony at the hearing from both Respondent and his wife showed that
Respondent had previously pushed, shoved, and slapped his wife when he was
drinking alcohol. His wife's testimony shows that she is supportive of her
husband, does not want him to lose his Bar license, and that she felt compelled
to call the police because she needed help from someone to control Respondent or
defuse the situation. She expressed her hope that the two of them could live in
an alcohol-free environment. She testified that without alcohol consumption in
the home they are kind to each other, there is no verbal or physical abuse
present, and that they have been together for twenty-four years.
¶16 She stated that their future life as a married couple had to be based
upon the absence of alcohol consumption in the home. She testified that she
participated in Respondent's in-patient counseling sessions, attended AA
meetings, and that she and Respondent were working on the issues as both a
couple and as individuals. She testified that Respondent's mother, sister, two
aunts, and an uncle had died during the previous five years and she thought that
his increased alcohol consumption during this period was tied to what she
perceived to be his depression concerning these events. She testified that
during the last two years Respondent became angry when he was intoxicated. She
testified that Respondent's consumption of alcohol occurred only at home.
¶17 In Zannotti, the lawyer pled nolo contendere to the misdemeanor
crimes of domestic assault and battery and malicious injury to property. He
received a two year deferred sentence by the District Court, and this Court
imposed a two-year suspension from the practice of law. When determining
discipline, this Court took into consideration the fact the trial court thought
it was necessary to keep Zannotti in the criminal justice system for a full two
years for the safety of the public.22 In the present case, the District Court has
Respondent being supervised by the criminal justice system for two years.
¶18 In Soderstrom, after a lawyer's plea of guilty for unlawful
possession of a controlled substance, we suspended the lawyer for two years and
a day.23 We
determined that his continued relapses with substance abuse adversely impacted
his fitness to practice law, and a substantial period of sobriety was necessary
before any request for reinstatement.24 We do consider for the purpose of mitigation
whether a lawyer's conduct has changed following medical and psychological
treatment.25 But we are concerned in the present case that
Respondent's period of sobriety is less than a year after a pattern of alcohol
and drug abuse that lasted for several years and that it became a factor in the
domestic abuse.
¶19 In Ijams, the lawyer was sentenced on four misdemeanor counts,
eluding a police officer, DUI-alcohol, operating a vehicle with defective
equipment and obstructing a police officer.26 In addition to his interim
suspension, his license to practice law was suspended until the date of his
completion of his deferred sentences, approximately one year after our
pronouncement. We again considered the length of a lawyer's criminal sentence as
one factor in arriving at the appropriate period of professional suspension to
be imposed.27
¶20 Respondent's testimony included a statement of contrition and his
humiliation and embarrassment that has arisen from his conduct. For the purpose
of mitigating discipline we also determine whether a lawyer recognizes the
adverse effect of his or her substance abuse and cooperates in the treatment for
remedying the abuse.28
¶21 Respondent has shown his willingness to cooperate with treatment by his
continued participation in Lawyers Helping Lawyers, AA, and the Batterers
Intervention Program, as well as his completed in-patient treatment program.
Respondent's brief expresses a willingness to have random drug testing and if he
fails any test to be immediately suspended, including the panel-recommended
two-years-and-a-day suspension upon a failed test, which would then require any
effort for professional reinstatement to comply with the requirements for a
lawyer who has been disbarred.29
¶22 We note Respondent's emphasis in the record on his attendance at a
Batterers Intervention Program, and the fact that he started the program before
the trial court made it a condition of his deferred criminal sentence. We
encourage his efforts in obtaining treatment. But while we have considered
compliance with court-ordered conditions for the purpose of mitigating
professional discipline, this Court expects a lawyer's compliance with a
court order as a professional attribute and such compliance is not a quid pro
quo for mitigation. A respondent's compliance with court orders, such as
attendance and voluntary commencement in a treatment program, is merely one
factor when we examine the record for evidence of an actual change in
attitude and conduct that the lawyer's treatment is designed to foster.30
¶23 We note and appreciate the testimony of Respondent's wife and her candid
assessments of their marital relationship and the current conduct of Respondent.
We also note the testimony of Respondent's AA sponsor and his positive view of
Respondent's progress in AA. While we note that the evidence shows a link
between Respondent's use of alcohol and his improper behavior, because of the
recentness of his sobriety we are concerned with Respondent's resolve to
permanently change his conduct. We have considered Respondent's absence
of prior professional discipline.31 We have also considered the District Court's
two-year period of supervision by the Department of Corrections, although this
factor is not controlling on the time a lawyer's professional license should be
suspended.32
¶24 The Bar Association requests that the Court suspend Respondent from the
practice of law for two years commencing on the date of his interim suspension.
At the mitigation hearing, Respondent argued that no final suspension be imposed
and that the order of interim suspension be lifted. Respondent's post-hearing
brief argues that the trial panel's recommendation be approved.
¶25 Respondent's trial panel recommended that he receive a six-month
suspension from the practice of law, combined with a deferred suspension of two
years and one day, subject to his compliance with seven terms of probation. Six
of the terms are:
(1) Respondent shall comply with all conditions of his court-imposed deferred
sentence, including Department of Corrections probation supervision until
released from his deferred sentence;
(2) Respondent shall refrain from any and all use of alcohol, mind-altering
substances or illegal drugs;
(3) Respondent shall sign and maintain a contact with Lawyers Helping
Lawyers, and have weekly contact with his mentor;
(4) Respondent shall waive all questions of confidentiality and permit his
sponsor at Lawyers Helping Lawyers to notify the General Counsel of the Oklahoma
Bar Association in the event of any default by Respondent in the terms of the
probation or deferred suspension;
(5) Respondent shall attend no less than three (3) AA sessions per week;
and
(6) Respondent shall abide by the Rules of Professional Conduct.
The seventh condition is that Respondent shall be subject to random drug
testing through an entity specified by the trial panel's recommendation, or by a
similar service as directed by Lawyers Helping Lawyers, and the testing shall be
at Respondent's expense, or through application for expense assistance through
the Lawyers Helping Lawyers Foundation.
¶26 Recommendations of a PRT trial panel are advisory and not binding on this
Court.33
This Court adjudicates all issues of fact and law in a lawyer disciplinary
proceeding.34 However, our review of the record should not be
considered as diminishing the importance of the PRT trial panel and its
recommendations. A trial panel functions as this Court's hearing examiner and
provides a procedural conduit for the record and legal arguments by making the
matter ready for this Court's original de novo review of the case.35 The lawyers
and non-lawyers who serve on trial panels of the PRT36 receive no compensation for their
services,37
and they provide an important public service to the Bar, this Court, and the
People of the State of Oklahoma. We agree with the trial panel that Respondent
should have both a suspension and a deferred suspension, but we disagree with
the trial panel's recommended time for suspension.
¶27 In Zannotti, the respondent physically attacked a person with whom
he had a previous dating relationship when the two of them met because
respondent was "wanting to get back together."38 His victim was traumatized and
needed counseling and medication as a result of the assault.39 She obtained a protective
order against the respondent. When discussing discipline we noted that the
respondent tried to shift responsibility for his conduct to his victim.40 We imposed
a two-year suspension of respondent's license to practice law.
¶28 In Givens, the intoxicated respondent physically attacked his
fourteen-year-old son, and two years later struck him again after he had
received a deferred criminal sentence of eighteen months and court-ordered
participation in a Batterers Intervention Program.41 We noted the respondent's pattern
of abuse, that he continued this pattern while on probation of his criminal
sentence, and his continued substance abuse relapses while in a substance abuse
program. We imposed a suspension of respondent's license for two years and one
day.
¶29 In the present case, Respondent and his adult victim, his wife, have
reconciled. They live together and she is helping him with his efforts to
maintain sobriety. She attends meetings on alcoholism and wants their home to be
without alcohol consumption. She did not seek or request a protective order and
does not feel threatened by Respondent when he is sober. She testified that she
loves her husband and that he is a loving husband when he is sober. She
testified that no physical abuse has occurred since the events on the Sunday
morning in May 2014. Respondent has not tried to shift to his wife any blame or
responsibility for his physical abuse of her. Respondent has not violated a
condition of his deferred criminal sentence. His drug tests have not shown any
substance abuse. In a lawyer disciplinary proceeding, it is the duty of this
Court to determine the appropriate level of discipline to be imposed, based
on the facts and circumstances of the case.42 We agree with the trial panel that
these circumstances are different from those in both Zannotti and
Givens.
¶30 However, Respondent did not limit his lack of self-control to his
relationship with his wife. When the police asked him for identifying
information he declined to provide the information and responded with cursing
and a derogatory epithet. His intoxicated tirade to the police included specific
threats of harm against his wife. His opprobrious conduct reflects on him and
the Bar. We conclude that Respondent should be immediately suspended from the
practice of law for one year and that he should have an additional one-year
deferred suspension with the seven conditions recommended by the trial panel and
as specified herein.
¶31 This Court has imposed a final suspension of a lawyer's license with that
suspension commencing from the date of a previous interim suspension of that
lawyer.43
Respondent's immediate one-year suspension commences on the date this Court
issued an interim suspension of Respondent's Bar license, February 2, 2015. In
addition to this one-year suspension until February 3, 2016, we conclude that
Respondent should continue to be professionally monitored both during and after
this one-year suspension with an additional one-year deferred professional
suspension of his Bar license until February 3, 2017.
¶32 We treat the immediate one-year suspension of Respondent's Bar license as
providing him the rule-specified opportunity to seek professional reinstatement
on or after February 3, 2016.44 The additional one-year deferred suspension is
conditioned upon Respondent's continued compliance with the seven conditions of
the trial panel specified herein and the one-year deferred suspension shall
cease on February 3, 2017, provided that Respondent does not violate any
condition of his deferred suspension.
III. Procedure for Implementing Respondent's Deferred
Professional Suspension
¶33 A lawyer's criminal conviction furnishes clear and convincing evidence
that the lawyer committed the criminal acts that are subsequently used to
warrant professional discipline in the form of a suspension or deferred
suspension of a Bar license.45 However, in the context of imposing a deferred
professional suspension of a license to practice law with conditions for the
lawyer's future conduct, we are not concerned with facts used as evidence for
the court's deferral of the suspension, but facts showing a violation of the
conditions of the lawyer's deferred suspension. A similar circumstance occurs
with revocation of a probation in a criminal case.46 Revocation of a constitutionally
protected liberty interest in a criminal probation case typically involves
the factual question whether the probationer has violated a condition of
probation,47 and in the acceleration of a deferred sentence at
an acceleration hearing "the court only makes a factual determination involving
the existence of a violation of the terms of the deferred sentence."48 The
probationer whose probation is revoked by a judicial proceeding is entitled to
notice of his or her alleged violations of probation.49
¶34 A lawyer accused of professional misconduct must also be afforded due
process of law prior to suspension or revocation of the lawyer's licence to
practice law.50 A lawyer receives notice of any adverse claim that
may be used to impose professional discipline.51 General Counsel for the Bar must
give notice to a lawyer that the Bar has filed a request with this Court for
implementing a deferred suspension.52
¶35 We have previously required that the General Counsel of the Bar
Association notify this Court when a lawyer's professional license probation has
been violated, and this Court then implements the deferred suspension.53 That
practice shall continue with General Counsel's notification filed in this Court
showing (1) the Respondent has violated his probation, (2) a request that the
Court immediately implement a deferred suspension, and (3) the General Counsel
has provided notice to Respondent of the Bar's filing.
¶36 We have previously stated that a deferred suspension would commence on
the date the conditions of deferral or probation were violated by the lawyer.54 Making the
effective date of the suspension the same date of the lawyer's violation
requires the lawyer to engage in professional self-policing. A lawyer has a duty
to protect the interests of his or her clients from adverse circumstances
arising from a professional suspension, including the Court implementing a
deferred suspension.55 This self-policing concept is also found in the
procedure for a resignation pending professional discipline where we make a
proper resignation effective on the date it was submitted to the Oklahoma Bar
Association.56 The previous practice will continue that a
deferred suspension will commence upon a respondent's violation of a condition
of that suspension; however, the Respondent will be provided an opportunity to
object to the General Counsel's request for implementing the deferred
sentence.
¶37 A lawyer must be given an opportunity to object to implementation of a
deferred professional suspension. A State may impose an interim suspension
pending an opportunity for a prompt hearing that would definitely determine a
fact that is used for deprivation of a state-created property right such as a
professional bar licences where, for example, a State has an important interest
in insuring the integrity of the practice of law carried on pursuant to that
professional license.57 An order of this Court implementing a deferred
suspension of a lawyer's license to practice law because of a violation of the
associated deferred-suspension conditions must be based upon facts before
this Court showing that the lawyer has actually violated the probation.58 This Court
has a non-delegable role as a finder of facts that a respondent's conduct
warrants the immediate implementation of a deferred suspension, i.e., a
violation has actually occurred and the suspension should thus be implemented.59
¶38 Upon General Counsel filing a notification seeking to implement
Respondent's deferred suspension, this Court will issue an interim order
immediately implementing the deferred suspension effective the date of the
alleged violation stated in General Counsel's notification, and providing
Respondent an opportunity to show cause why the Court should not make the
deferred suspension final.60 Upon Respondent's filed waiver of his opportunity
to respond or his failure to timely respond to the Court's order, a final order
shall be entered implementing the deferred suspension. Upon Respondent's timely
filed objection to the Bar's request, the Court will determine if the record is
adequate for implementing the deferred suspension, whether the interim order
implementing the suspension should be set aside, and take any other action that
the Court deems appropriate.
¶39 Respondent is cautioned that should the General Counsel properly notify
this Court of Respondent's failure to comply with one or more of the
deferred-suspension conditions at any time prior to February 3, 2017, he is
subject to this Court entering an interim order immediately imposing the
one-year suspension. Respondent is cautioned that any future unprofessional
conduct by him during his period of suspension and deferred suspension is
subject to this Court imposing additional professional discipline when notice of
his conduct is properly brought to our attention by the OBA.61 If upon a
violation of Respondent's deferred suspension, the Bar seeks to impose
professional discipline in addition to application of the one-year deferred
suspension, then the Bar should: (1) in the present Bar proceeding notify
this Court of Respondent's violation for immediate implementation of the
deferred suspension in this proceeding, and (2) utilize the proper disciplinary
procedure for the particular misconduct alleged against the Respondent,
e.g., the procedures specified in Rules 6, 7, or 10.62
IV. COSTS
¶40 In a proceeding pursuant to Rule 7 RGDP, we have imposed the costs of the
proceeding on the lawyer receiving professional discipline.63 In the context of a Rule
7 proceeding, we have noted that Rule 6.16 RGDP provides the costs of the
investigation, record and disciplinary proceedings shall be surcharged against
the disciplined lawyer, unless remitted for good cause by this Court.64 Rule 6.16
requires the costs to be paid within ninety (90) days.
¶41 Respondent had notice that the costs of a Rule 7 proceeding could be
imposed against him. No good cause for remission has been shown. The application
of the Bar Association for assessing costs against the respondent in the amount
of One-Thousand Two-Hundred and Fifty-One dollars and Eighty cents ($1,251.80)
is granted. The costs shall be paid by Respondent within ninety (90) of the date
this opinion becomes final.
V. Conclusion
¶42 Respondent is suspended from the practice of law for one year commencing
on February 2, 2015, with an additional one-year suspension that is deferred
upon Respondent's compliance with the conditions of the deferral until February
3, 2017.
¶43 In the event that Respondent violates a condition of his deferred
suspension, the General Counsel of the Bar Association shall notify this Court
and request an immediate implementation of a one-year professional suspension
against Respondent. In the event Respondent violates a condition of his deferred
suspension, the effective date and commencement of the previously deferred
one-year suspension shall be the date Respondent violated a condition of his
deferred sentence.
¶44 Respondent is ordered to pays the costs of this proceeding in the amount
of $1,251.80 within ninety days from the date this opinion is final.

¶45 REIF, C. J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, GURICH, JJ.,
concur.
¶46 COMBS, V. C. J., TAYLOR, J., dissent.

¶47 TAYLOR, J.,
dissenting. I would suspend the Respondent for two years. He should not be
allowed to practice law while on criminal probation.

FOOTNOTES

1
State of Oklahoma v. James M. Demopolos, CF-2014-3767, District Court of
Oklahoma County.

2 The
first count of the Information alleged that Respondent had offered a bribe to
the police officers in the form of money to release him from custody in
violation of 21 O.S. § 381. The
State moved to dismiss this Count and this Count was noted as dismissed in the
Plea of Guilty.

3 21 O.S. § 540: "Every person who
willfully delays or obstructs any public officer in the discharge or attempt to
discharge any duty of his office, is guilty of a misdemeanor."

4 21 O.S. § 1378(B): "Any person who
shall threaten to perform an act of violence involving or intended to involve
serious bodily harm or death of another person shall be guilty of a misdemeanor,
punishable upon conviction thereof by imprisonment in the county jail for a
period of not more than six (6) months."

5 21 O.S. § 644(C): "Any person who
commits any assault and battery against a current or former spouse, a present
spouse of a former spouse, a former spouse of a present spouse, parents, a
foster parent, a child, a person otherwise related by blood or marriage, a
person with whom the defendant is or was in a dating relationship as defined by
Section 60.1 of Title 22 of the Oklahoma Statutes, an individual with whom the
defendant has had a child, a person who formerly lived in the same household as
the defendant, or a person living in the same household as the defendant shall
be guilty of domestic abuse. Upon conviction, the defendant shall be punished by
imprisonment in the county jail for not more than one (1) year, or by a fine not
exceeding Five Thousand Dollars ($5,000.00), or by both such fine and
imprisonment. Upon conviction for a second or subsequent offense, the person
shall be punished by imprisonment in the custody of the Department of
Corrections for not more than four (4) years, or by a fine not exceeding Five
Thousand Dollars ($5,000.00), or by both such fine and imprisonment. The
provisions of Section 51.1 of this title shall apply to any second or subsequent
offense."
21 O.S. 2011 § 644 was amended
by Laws 2014, c. 71 § 1, eff. Nov. 1, 2014, and the language of paragraph (C)
does not appear to have been altered by the amendment. 2014 Okla. Sess. Laws, c.
71, § 1, pg. 233.

6 The
Victim Services Unit of the Office of the Oklahoma Attorney General provides
services for persons who require domestic violence or sexual assault services
through a domestic violence or sexual assault program; and for the purpose of
providing this service a "'batterers intervention program' or 'batterers
treatment program' means an agency, organization, facility or person who offers,
provides or engages in the offering of counseling or intervention services to
persons who commit domestic abuse." 74 O.S.2011 § 18p-1(D).

7 5
O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.1: "A
lawyer who has been convicted or has tendered a plea of guilty or nolo
contendere pursuant to a deferred sentence plea agreement in any jurisdiction of
a crime which demonstrates such lawyer's unfitness to practice law, regardless
of whether the conviction resulted from a plea of guilty or nolo contendere or
from a verdict after trial, shall be subject to discipline as herein provided,
regardless of the pendency of an appeal."

8 5
O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.2:
"The clerk of any court within this State in which a lawyer is convicted or as
to whom proceedings are deferred shall transmit certified copies of the Judgment
and Sentence on a plea of guilty, order deferring judgment and sentence,
indictment or information and judgment and sentence of conviction to the Chief
Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar
Association within five (5) days after said conviction. The documents shall also
be furnished to the Chief Justice by the General Counsel within five (5) days of
receiving such documents. Such documents, whether from this jurisdiction or any
other jurisdiction shall constitute the charge and be conclusive evidence of the
commission of the crime upon which the judgment and sentence is based and shall
suffice as the basis for discipline in accordance with these rules."

9
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 22, 330 P.3d 11, 16.

10 5
O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.3:
"Upon receipt of the certified copies of Judgment and Sentence on a plea of
guilty, order deferring judgment and sentence, indictment or information and the
judgment and sentence, the Supreme Court shall by order immediately suspend the
lawyer from the practice of law until further order of the Court. In its order
of suspension the Court shall direct the lawyer to appear at a time certain, to
show cause, if any he has, why the order of suspension should be set aside. Upon
good cause shown, the Court may set aside its order of suspension when it
appears to be in the interest of justice to do so, due regard being had to
maintaining the integrity of and confidence in the profession."

11
State ex rel. Oklahoma Bar Ass'n v. James M. Demopolos, 2015 OK 5, S.C.B.D. No. 6223 (Feb.
2, 2015, Published in O.B.J. Only).

12
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 8, 343 P.3d 214,
216-217, State ex rel. Oklahoma Bar Ass'n v. Funk, 2005 OK 26, ¶ 3, 114 P.3d 427, 430.

13
State ex rel. Oklahoma Bar Ass'n v. Chappell, 2004 OK 41, ¶ 23, 93 P.3d 25, 31.

14
Givens, 2014 OK 103, at ¶
9, 343 P.3d at 217, citing State ex rel. Oklahoma Bar Ass'n v.
Soderstrom, 2013 OK 101, ¶¶
9-10, 321 P.3d 159,
160.

15 See
Rule 7.2 at note 8 supra; Givens, 2014 OK 103, at ¶ 9, 343 P.3d at
217; State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 1, 60 P.3d 1024, 1026 (although a
lawyer may in the interest of explaining his or her conduct or by way of
mitigating the discipline to be imposed submit evidence tending to mitigate the
severity of discipline, a post-conviction disciplinary hearing will not
relitigate the facts which gave rise to the criminal charges).

16
State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 45, 318 P.2d 1114,
1127.

17
State ex rel. Oklahoma Bar Ass'n v. Hart, 2014 OK 96, ¶ 8, 339 P.3d 895, 898;
State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 45, 318 P.2d 1114,
1127, citing State ex rel. Oklahoma Bar Ass'n v. Cooley, 2013 OK 42, ¶ 11, 304 P.3d 453, 455.

18 See
note 15 supra, and citation to Shofner.

19
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217
quoting State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 24, 330 P.3d 11, 17.

20
State rel. Oklahoma Bar Ass'n v. Armstrong, 1990 OK 9, 791 P.2d 815, 818 quoting Comment, 5
O. S. Supp.1988, Ch. 1, App. 3-A, Rule 8.4 (emphasis added). See note 21,
infra, citing Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217,
and its reliance on Rule 8.4 and similar language found in current Rule 8.4,
Comment 2.

21
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217,
quoting O. R. P. C. Rule 8.4(b) and Comments 2 to Rule 8.4.
Rule 8.4, O. R. P. C. provides in part: "It is professional misconduct for a
lawyer to: . . . (b) commit a criminal act that reflects adversely on the
lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . .
. ."
Comment 2 to Rule 8.4 provides in part: "Although a lawyer is personally
answerable to the entire criminal law, a lawyer should be professionally
answerable only for offenses that indicate lack of those characteristics
relevant to law practice. Offenses involving violence, dishonesty, breach of
trust, or serious interference with the administration of justice are in that
category. A pattern of repeated offenses, even ones of minor significance when
considered separately, can indicate indifference to legal obligation."

22 See
the explanation of Zannotti in State ex rel. Bar Ass'n v. Givens,
2014 OK 103, ¶ 19, 343 P.3d at
218, citing Zannotti, 2014 OK
25 at ¶ 24, 330 P.3d
11.

23
State ex rel. Oklahoma Bar Ass'n v. Soderstrom, 2013 OK 101, ¶ 13, 321 P.3d 159, 161,

24 See
the explanation of Soderstrom in State ex rel. Bar Ass'n v.
Givens, 2014 OK 103, ¶ 20,
343 P.3d at 218-219, citing Soderstrom, 2013 OK 101 at ¶ 12, 321 P.3d 159.

25
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Busch, 1998 OK 103, ¶ 50, 976 P.2d 38, 56 (we noted that the
lawyer's conduct had not changed following his treatment when we concluded that
his mitigation plea was unpersuasive).

26
State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, 338 P.3d 639,

27
Ijams, 2014 OK 93, at ¶
8, 338 P.3d at 642.

28
Ijams, 2014 OK 93, at ¶
8, 338 P.3d at 642.

29
State rel. Oklahoma Bar Ass'n v. Giger, 2003 OK 61, n. 34, 72 P.3d 27, 40; State ex rel.
Oklahoma Bar Ass'n v. Wolfe, 919
P.2d 427, 433 (Kauger, V.C.J., concurring, and joined by Watt, J.) ("A
suspension from the practice of law for a period of two years and one day is
tantamount to disbarment in that the suspended attorney must follow the same
procedures for readmittance as would a disbarred counterpart.").

30 See
the explanation of Soderstrom in Givens, ¶ 20, that is cited in
note 24 supra, and the reference to Busch, ¶ 50, that is cited in
note 25 supra.

31
State ex rel. Oklahoma Bar Ass'n v. Dobbs, 2004 OK 46, ¶ 106, 94 P.3d 31, 70 (absence of prior
discipline may be considered for mitigation of professional
discipline).

32
This Court has an exclusive and nondelegable power in regulating the
practice of law and determining professional discipline for a lawyer. State
ex rel. Oklahoma Bar Ass'n v. Casey, 2012 OK 93, ¶2, 295 P.3d 1096, 1098; In re
Spilman, 2010 OK 70, ¶ 10,
240 P.3d 702, 709. A criminal
sentence imposed by a District Court may not be used to control this
Court's determination of an appropriate professional discipline for a
lawyer.

33
State ex rel. Oklahoma Bar Ass'n v. Bradley, 2014 OK 78, ¶ 23, 338 P.3d 629, 637; State ex rel.
Oklahoma Bar Ass'n v. Aston, 2003 OK 101, ¶ 10, 81 P.3d 676, 678.

34
State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 48, n. 50, 264 P.3d 1197, 1215. See also
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 4, 330 P.3d 11, 12 (stipulations
inconsistent with the record are rejected upon de novo review).

35
State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, at ¶ 51, 264 P.3d at
1216.

36
Three members of the PRT serve as members of a trial panel. RGDP, 5 O.S. Ch. 1,
App. 1-A, Rule 6.6. The Professional Responsibility Tribunal is composed of
twenty-one members, fourteen lawyers and seven non-lawyers, with this number
subject to increase when necessary. RGDP, Rule 4.1. The lawyer members are
appointed by the President of the Association subject to approval by the Board
of Governors, and the non-lawyer members are appointed by the Governor of the
State of Oklahoma. Id.

37
RGDP, Rule 4.4: "The members of the Tribunal shall receive no compensation for
their services, but shall be reimbursed for their travel and other reasonable
expenses incidental to the performance of their duties."

38
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶¶ 5-6 , 330 P.3d 11, 13.

39
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 12, 330 P.3d 11, 14.

40
State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 19, 330 P.3d 11, 16 (Respondent's
testimony . . . shows that Respondent has not accepted responsibility for his
actions and undermines the testimony of his remorse."

41
State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶¶ 2-3, 343 P.3d at
215.

42
State ex rel. Oklahoma Bar Ass'n v. Weigel, 2014 OK 4, ¶ 27, 321 P.3d 168, 177.

43
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 24, 343 P.3d at 219
(suspension for two years and one day); State ex rel. Oklahoma Bar Ass'n v.
Wilcox, 2014 OK 1, ¶ 56, 318
P.2d at 1130, (disbarred from the date of interim suspension); State ex rel.
Oklahoma Bar Ass'n v. Willis, 1993 OK 138, 863 P.2d 1211 (suspension for 15
months commencing on the date of interim suspension).
Similarly, we have approved resignations from the Bar Association with
pending professional discipline proceedings and given such with an effective
earlier date when a showing was made that the lawyer was no longer able to
practice law as of that date. State rel. Oklahoma Bar Ass'n v. Perkins,
1988 OK 65, 757 P.2d 825 (rule
stated).

44 5
O.S.2011 Ch. 1, App.1-A, RGDP, Rule 11.8:
A lawyer who has been suspended for two (2) years or less upon disciplinary
charges may resume practice upon the expiration of the period of suspension by
filing with the Clerk of the Supreme Court an original and two (2) copies of an
affidavit affirming that affiant has not engaged in the unauthorized practice of
law or otherwise violated the rules of the Association or the terms of the
affiant's order of suspension. The affidavit shall also describe all business or
professional activities of the affiant and places of residence during the term
of the suspension. No order of Court is necessary; however, material deletions
or misrepresentations in the affidavit shall be grounds for subsequent
discipline.
A copy of the affidavit shall be served on the General Counsel by the lawyer
at the time of its filing, who may within sixty days file a separate
disciplinary complaint with the Professional Responsibility Commission stating
the lawyer during the suspension engaged in the unauthorized practice of law or
other actions which would render the lawyer subject to discipline.

45
State ex rel. Oklahoma Bar Ass'n v. Offill, 2014 OK 27, ¶ 3, 324 P.3d 406, 407; State ex rel.
Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 29, 323 P.3d 222, 228. See
Shofner at note 15 supra.

46
See Sonnier v. State, 2014 OK
CR 13, ¶ 13, 334 P.3d 948,
952 citing Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 36
L.Ed.2d 656 (1973) and Morrissey v. Brewer, 408 U.S. 471, 488-89, 92
S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("In the context of parole and probation
revocation (both judicial proceedings), the United States Supreme Court has
confirmed that minimal due process is required, but declined to prescribe a
particular procedure for those proceedings.") (parenthetical information in
original).

47
Black v. Romano, 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636
(1985).

48
Hagar v. State, 1999 OK CR
35, ¶ 10, 990 P.2d 894,
898.

49
Black v. Romano, 471 U.S. at 612. Cf. Sonnier v. State, 2014 OK CR 13, ¶ 13, 334 P.3d 948, 952 citing Tate v.
State, 2013 OK CR 18, ¶ 33,
313 P.3d 274, 283-84 (the Court
of Criminal Appeals has stated in the context of judicial proceedings: "This
Court has held that, in that context, a defendant must be 'sufficiently
apprised' of the grounds on which probation or a suspended sentence is
revoked.").

50
State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 56, 264 P.3d at 1218.
See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-239, 77
S.Ct. 752, 1 L.Ed.2d 796 (1957) ("A State cannot exclude a person from the
practice of law or from any other occupation in a manner or for reasons that
contravene the Due Process or Equal Protection Clause of the Fourteenth
Amendment."); Willner v. Committee on Character and Fitness, 373 U.S. 96,
102, 83 S.Ct. 1175, 10 L.Ed. 244 (1963) (requirements of procedural due process
must be met before a State can exclude a person from practicing law or from any
other occupation in a manner or for reasons that contravene the Due Process
Clause of the Fourteenth Amendment).

51
State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 8, 23 P.3d 268, 273.

52
In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117
(1968).

53
State ex rel. Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 31, 323 P.3d 222, 229.

54
State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶ 10, 338 P.3d 639, 643; State ex rel.
Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 31, 323 P.3d 222, 229.

55
See 5 O.S.2011 Ch. 1, App. 3-A, Rule 1.3, states in part: "A lawyer
should pursue a matter on behalf of a client despite opposition, obstruction or
personal inconvenience to the lawyer, and take whatever lawful and ethical
measures are required to vindicate a client's cause or endeavor. A lawyer must
also act with commitment and dedication to the interests of the client and with
zeal in advocacy upon the client's behalf."
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Running,
2011 OK 75, ¶ 15, 262 P.3d 736, 740 ("Respondent has
shown a repeated disregard of this Court's rules governing lawyers. He has been
suspended three times for failure to pay bar dues. In the present case, he
continued to practice law after suspension without notifying his clients or
withdrawing from pending litigation, all in violation of Rules 1.3 and 9.1 RGDP,
and Rule 5.5(a) RPC.").

56
State ex rel. Oklahoma Bar Ass'n v. Bourland, 2001 OK 12, ¶ 14, 19 P.3d 289, 291 (explaining that
an effective date of a resignation could be prior to the Court's order accepting
the resignation; and also noting "the rule-mandated duties of a lawyer subject
to final discipline, for example, notifying clients, withdrawing from
proceedings, and notifying the Professional Responsibility Commission.");
State ex rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65, 757 P.2d 825, 827 ("The effective
date of a resignation is upon filing the resignation with the Executive
Director.").

57
Barry v. Barchi, 443 U.S. 55, 64-65, 99 S.Ct. 2642, 61 L.Ed.2d 365
(1979).

58
Schware v. Board of Bar Examiners, 353 U.S. 232, 246-247, 77 S.Ct. 752, 1
L.Ed.2d 796 (1957) (A State could not, consistently with due process, refuse a
lawyer a license to practice law on the basis of a finding that he was morally
unfit when there was no evidence in the record).

59
State ex rel. Oklahoma Bar Ass'n v. Anderson, 2005 OK 9, ¶ 15, 109 P.3d 326, 330 ("Our duty to
review the facts to determine if an ethical violation occurred is
non-delegable.").

60
Barry v. Barchi, 443 U.S. at 64-65.

61
See, e.g., State ex rel. Oklahoma Bar Ass'n v. Moon, 2013 OK 7, 295 P.3d 17 (during a deferred
suspension of two years and one day a lawyer's additional acts of unprofessional
conduct warranted disbarment). Cf. State ex rel. Oklahoma Bar Ass'n v.
Brewer, 1989 OK 172, 794 P.2d 397, 399 (complaint of
additional allegations of misconduct may be consolidated with reinstatement
proceeding).

62 See
Brewer, 794 P.2d at 399, cited in note 61 supra, and the
explanation in Brewer that when a disciplinary proceeding is pending,
along with a reinstatement proceeding, and new allegations of
professional misconduct are made by the Bar, they should be raised by filing an
additional formal professional complaint with the Court followed by seeking
available and appropriate procedural opportunities for consolidation to conserve
judicial resources.

63
State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶ 13, 338 P.3d 639, 643; State ex rel.
Oklahoma Bar Ass'n v. Wilburn, 2010 OK 25, ¶ 13, 236 P.3d 79, 82; State ex rel.
Oklahoma Bar Ass'n v. Spradling, 2009 OK 39, ¶ 10, 213 P.3d 570, 575.

64
State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 3, 60 P.3d 1024, 1027 (citing Rule
6.16, RGDP).
5 O.S.2011 Ch. 1, App. 1-A, Rule 6.16: "The costs of investigation, the
record, and disciplinary proceedings shall be advanced by the Oklahoma Bar
Association (or the Professional Responsibility Commission, if provision
therefor has been made in its budget). Where discipline results, the cost of the
investigation, the record, and disciplinary proceedings shall be surcharged
against the disciplined lawyer unless remitted in whole or in part by the
Supreme Court for good cause shown. Failure of the disciplined lawyer to pay
such costs within ninety (90) days after the Supreme Court's order becomes
effective shall result in automatic suspension from the practice of law until
further order of the Court."
 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Criminal Appeals Cases
 CiteNameLevel

 2013 OK CR 18, 313 P.3d 274, TATE v. STATEDiscussed
 2014 OK CR 13, 334 P.3d 948, SONNIER v. STATEDiscussed at Length
 1999 OK CR 35, 990 P.2d 894, 70 OBJ 2766, Hagar v. StateDiscussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1988 OK 65, 757 P.2d 825, State ex rel. Oklahoma Bar Ass'n v. PerkinsDiscussed at Length
 1989 OK 172, 794 P.2d 397, State ex rel. Oklahoma Bar Ass'n v. BrewerDiscussed
 1990 OK 9, 791 P.2d 815, State ex rel. Oklahoma Bar Ass'n v. ArmstrongDiscussed
 1993 OK 138, 863 P.2d 1211, 64 OBJ 3290, State ex rel. Oklahoma Bar Ass'n v. WillisDiscussed
 2001 OK 12, 19 P.3d 289, 72 OBJ 553, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOURLANDDiscussed
 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKYDiscussed
 2002 OK 84, 60 P.3d 1024, STATE ex. rel. OKLAHOMA BAR ASS'N v. SHOFNERDiscussed at Length
 2003 OK 61, 72 P.3d 27, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIGERDiscussed
 2003 OK 101, 81 P.3d 676, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ASTONDiscussed
 2004 OK 41, 93 P.3d 25, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CHAPPELLDiscussed
 2004 OK 46, 94 P.3d 31, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DOBBSDiscussed
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSONDiscussed
 2005 OK 26, 114 P.3d 427, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FUNKDiscussed
 1996 OK 75, 919 P.2d 427, 67 OBJ 2051, State ex rel. Oklahoma Bar Assn. v. WolfeCited
 2009 OK 39, 213 P.3d 570, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SPRADLINGDiscussed
 2010 OK 25, 236 P.3d 79, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILBURNDiscussed
 2010 OK 70, 240 P.3d 702, IN THE MATTER OF THE APPLICATION OF SPILMANDiscussed
 2011 OK 75, 262 P.3d 736, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. RUNNINGDiscussed
 2011 OK 84, 264 P.3d 1197, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHEDDiscussed at Length
 2012 OK 93, 295 P.3d 1096, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CASEYDiscussed
 2013 OK 7, 295 P.3d 17, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOONDiscussed
 2013 OK 42, 304 P.3d 453, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEYDiscussed
 2013 OK 101, 321 P.3d 159, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SODERSTROMDiscussed at Length
 2014 OK 1, 318 P.3d 1114, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOXDiscussed at Length
 2014 OK 4, 321 P.3d 168, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WEIGELDiscussed
 2014 OK 20, 323 P.3d 222, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDTDiscussed at Length
 2014 OK 25, 330 P.3d 11, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ZANNOTTIDiscussed at Length
 2014 OK 27, 324 P.3d 406, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. OFFILLDiscussed
 2014 OK 78, 338 P.3d 629, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRADLEYDiscussed
 2014 OK 93, 338 P.3d 639, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. IJAMSDiscussed at Length
 2014 OK 96, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HARTCited
 2014 OK 103, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIVENSDiscussed at Length
 2015 OK 5, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOSCited
 1998 OK 103, 976 P.2d 38, 69 OBJ 3488, State ex. rel. Oklahoma Bar Association v. BuschDiscussed
Title 21. Crimes and Punishments
 CiteNameLevel

 21 O.S. 1378, Punishment for Planning or Threatening Violent ActDiscussed
 21 O.S. 381, Bribing OfficersCited
 21 O.S. 540, Obstruction of Public Officer - Recording an OfficerDiscussed
 21 O.S. 644, Punishment for Assault and BatteryDiscussed at Length
Title 74. State Government
 CiteNameLevel

 74 O.S. 18p-1, Victims Services Unit of the Office of the Attorney GeneralCited